# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THEODORE FLOYD STANKEWITZ,<br><br>    Petitioner,<br><br>  v.<br><br>DERRAL G. ADAMS,<br><br>    Respondent._____ / | 1:06-cv-0275-OWW-DLB (HC)<br><br>FINDINGS AND RECOMMENDATION REGARDING FIRST AMENDED PETITION<br><br>[Doc. 27] |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]

## BACKGROUND

Following a jury trial in the Fresno County Superior Court, Petitioner was conviction of attempted murder (Cal. Penal Code §§ 187(a)/664),[2] assault with a firearm (§ 245(a)(2), first degree burglary (§§ 459, 460), unlawful possession of a firearm (§ 12021(a)(1)).  It was also found true that he personally used a firearm and caused great bodily injury (§ 12022.5(a), 12022.53(b)-(d), 12022.7(a)).  In addition, Petitioner admitted that he suffered a prior serious felony conviction within the meaning of California's Three Strikes law.  (§§ 667(b)-(i), 1170.12).

Petitioner was sentenced to a determinate term of 23 years plus a consecutive

---

[1] Respondent submits that the proper custodian is Derral G. Adams-the current Warden at Corcoran State Prison.  Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil procedure, Warden Adams is substituted in place of Warden Scribner.

[2] All further statutory references are to the California Penal Code unless otherwise indicated.

1

indeterminate term of 25 years-to-life in state prison. (Lodged Doc. No. 5.)

Petitioner filed a timely notice of appeal. On May 18, 2005, the California Court of Appeal, Fifth Appellate District affirmed Petitioner's conviction. (Id.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on August 10, 2005. (Lodged Doc. Nos. 6, 7.)

Petitioner filed the instant federal petition for writ of habeas corpus on March 13, 2006, and an amended petition on March 31, 2009. (Court Doc. 27.)

Respondent filed an answer to the amended petition on June 1, 2009, and Petitioner filed a traverse on July 1, 2009. (Court Docs. 33, 36.)

## STATEMENT OF FACTS

In June 2002 James Cogdell and Vicki Hubble lived together in a mobile home and a small trailer located on a parcel of property on Little Sandy Road (the property). One can see the trailer from the mobile home and vice-versa.

On the morning of June 20th Cogdell took some medication and went to sleep in the trailer. A few hours later, Hubbell was in the mobile home when she heard dogs barking and a man yelling. Cogdell was awakened by the noise. Cogdell opened the trailer door and Hubbell looked through a window to ascertain the source of the commotion. They saw [Petitioner], with whom they had been acquainted for the past five to eight years, standing beside a white Ford Thunderbird. Codefendant Jeffrey Marquez and another person were sitting inside the car. Cogdell recognized the Ford Thunderbird as one belonging to Marquez's wife, Donna McCain Marquez (McCain).

[Petitioner] approached the trailer, yelling that Cogdell owed him and that he was going to kill him. Cogdell told [Petitioner] to leave. [Petitioner] began to walk away. Cogdell closed the door, but quickly reopened it because [Petitioner] continued to yell.

Marquez got out of the car. He opened the trunk, removed an object and tossed it to [Petitioner]. [Petitioner] approached Cogdell, holding the object. Cogdell and Hubbell realized that [Petitioner] was carrying a gun. Cogdell described it as a sawed-off .22 caliber rifle. During her testimony Hubble described it as an older rifle with a brown stock. [Petitioner] pointed the rifle at Cogdell and said that "he was going to kill him." Cogdell replied, "Go ahead and kill me then."

Cogdell testified that [Petitioner] entered the trailer without his permission, yelling that Cogdell "owed him," and "he was going to take whatever." Cogdell told [Petitioner] that "[h]e ain't taking nothing." [Petitioner] repeatedly said that "he's crazy and that he'd kill me." [Petitioner] also said, "you know I can do it."

Cogdell grabbed the rifle's barrel and pulled it to his left. Cogdell and [Petitioner] began struggling. [Petitioner] discharged the rifle, sending a bullet

2

| | |
|---|---|
| 1 | through a cabinet. They continued to struggle and about 30 seconds later [Petitioner] discharged the gun a second time, sending a bullet into Cogdell's lower left leg. |

through a cabinet. They continued to struggle and about 30 seconds later [Petitioner] discharged the gun a second time, sending a bullet into Cogdell's lower left leg.

Hubbell testified that she heard [Petitioner] and Cogdell arguing. [Petitioner] insisted that he was going to enter the trailer. Cogdell was trying to push him outside. The two men began wrestling in the trailer's entry. Hubbell heard a gunshot and then she saw [Petitioner] on the floor, half in and half out of the trailer's entry. [Petitioner] still had the gun in his hands. He started to get on his feet. While he was on his knees he fired a second shot, causing Cogdell to fall backwards. [Petitioner] got to his feet. He yelled, "You are crazy for messing with me. You know I'll kill you. What are you doing? Are you crazy? You know I'm-you know I'll kill you. I'm going to kill you."

[Petitioner] walked back to the car, carrying the rifle. He handed the rifle to Marquez, who slid it in behind the driver's seat. The two men got into the car. Then [Petitioner] got out of the car, saying "he had to finish this, it was not done." Marquez got out of the car and said to [Petitioner], "Get in the car, let's go." They got back into the car and Marquez drove away.

Marquez testified that [Petitioner] got out of the car. Marquez said that he did not hear [Petitioner] yelling at anyone. After waiting for a few minutes, Marquez stepped out of the car, looked around and yelled to [Petitioner] that they needed to leave. [Petitioner] returned to the car. He did not have a gun in his hands and he was not running. Marquez denied hearing any gunshots and testified that he did not hand or toss a gun to [Petitioner]. Marquez was angry with [Petitioner] and yelled at him because he noticed two syringes in the car that he believed belonged to [Petitioner]. Marquez was afraid McCain would see the syringes. He was taking methadone to help him stop using illegal drugs because McCain had threatened to leave him if he used drugs again.

McCain testified she was in the back seat of the car and Marquez was driving that morning. [Petitioner] was in the front passenger seat. After stopping for gas and food, [Petitioner] directed Marquez to the compound. When they arrived, [Petitioner] got out of the car. McCain saw [Petitioner] standing near the travel trailer. Marquez got out of the car and yelled to [Petitioner], "Cousin, come on, let's go." [Petitioner] was facing the trailer. McCain could hear dogs barking and [Petitioner] yelling, but she did not know what he was saying. She did not hear any gunshots and [Petitioner]'s hands were empty. She did not see any blood or scratches on [Petitioner]'s body. After [Petitioner] got back into the car, Marquez yelled at him for being away so long. [Petitioner] apologized. Marquez retorted, "No, you're not sorry, you're just drunk."

They drove to a local park and reservoir. McCain and Marquez went to the restrooms while [Petitioner] remained in the car. When they returned, McCain saw [Petitioner] jump into the water. Soon thereafter, they left the park.

Meanwhile, Hubbell telephoned for emergency assistance. Cogdell was taken to the hospital and treated. The crime scene was processed. Shoe prints with a bear claw design were found on the ground outside the trailer's entrance. Cogdell's blood was found on the trailer's entry floor. A bullet exit hold was discovered in a drawer front.

Abel Rival was working as a flagman on a road project in the general vicinity of the property. He told deputies that between noon and 1:00 p.m. he saw

3

a white Ford Thunderbird containing two men and one woman, all of who were Hispanic or American Indian. The driver had a pock-marked face and was wearing a red bandana.

At approximately 3:00 p.m., McCain's car was stopped by sheriff's deputies about three miles away from the park. A red bandana, two hypodermic needles, two bottles of methadone, empty beer cans, and a bottle containing nine pink pills were found in the car.

Deputy James Minenna asked [Petitioner] "where the gun was." [Petitioner] replied, "Is that guy dead?" Deputy Minenna asked, Don't you know?" [Petitioner] responded, "If I had a gun, that guy would be dead. If I carry a gun, that means someone is going to die. You should know me by now." [Petitioner] repeated this statement at least three times. While [Petitioner] was being transported to the sheriff's station, he threatened to assault the person "who told on him, who set him up."

The soles of [Petitioner's] shoes were consistent with the shoe prints outside the trailer. No blood was observed on [Petitioner's] clothing and no evidence of gunshot residue was detected on [Petitioner] or Marquez.

Hubble testified that her brother-in-law found a .22 caliber shell casing on the ground near the travel trailer approximately 20 days after the shooting.

(Lodged Doc. No. 5, Opinion, at 3-6.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.   Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams (Terry) v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id., quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (*per curiam*). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted). "Rather, that application must be objectively unreasonable." Id. (citations omitted).

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

5

Courts further review the last reasoned state court opinion. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991). However, where the state court decided an issue on the merits but provided no reasoned decision, courts conduct "an independent review of the record . . . to determine whether the state court [was objectively unreasonable] in its application of controlling federal law." Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

C.  Instructional Error

Petitioner contends that the trial court erred when it responded to the jury's question on the sequence by which they could consider the lesser included offenses.

1.  *State Court Decision*

The last reasoned decision of the California Court of Appeal, Fifth Appellate District rejected Petitioner's claim stating the following:

> The jury was instructed on attempted voluntary manslaughter as a lesser included offense to the charged crime of attempted murder. The court included CALJIC Nos. 17.10 and 8.72 in the charge. CALJIC No. 17.10 informed the jury that it possessed discretion to choose the order in which it evaluated each charged offense and any lesser crimes and that it "may find it productive to consider and reach a tentative conclusion on all charges and lesser crimes before reaching any final verdict[s]. However, the court cannot accept a guilty verdict on a lesser crime unless you have unanimously found the defendant not guilty of the [charged] [greater] crime." CALJIC No. 8.72 informed the jury that if it unanimously agrees that it has a reasonable doubt whether the crime is murder or manslaughter, it must give appellant the benefit of the doubt and find him guilty of manslaughter rather than murder.
>
> During its deliberations, the jury sent out the following note: "We are confused about the instructions on page 66. Do we need to unanimously agree that we have reasonable doubt about murder before we can consider voluntary manslaughter?" After discussion with counsel, the court addressed the jury. First, it reread CALJIC No. 8.72, specifying that the instruction applied to attempted offenses. Next, it referred the jury to CALJIC No. 17.10 and reread the instruction's last paragraph, which is quoted above. The court made the following concluding remarks:
>
> > "*So you either have to all agree it's attempted murder, and if you can't then you may consider attempted voluntary manslaughter.* If you decide that it's attempted voluntary manslaughter I cannot accept a guilty [verdict] on attempted voluntary manslaughter unless you have all agreed he is not guilty of the attempted murder." (Italics added.)

6

Appellant argues that the court's concluding summary was legally incorrect and contradicted CALJIC No. 17.10 because it improperly told the jurors that they must unanimously decide appellant did not commit attempted murder before considering whether the offense was voluntary manslaughter. We agree that the court's summary was incorrect, but find the error nonprejudicial.

In *People v. Dennis* (1998) 17 Cal.4th 468 (*Dennis*), our high court explained the relevant legal principle:

> "We have held that a court may restrict a jury from returning a verdict on a lesser included offense before acquitting on a greater offense, but may not preclude it from considering lesser offenses during deliberations. [Citations.] Thus, a trial court should not tell the jury it must first unanimously acquit the defendant of the greater offense before deliberating on or even considering a lesser offense." (*Dennis, supra,* 17 Cal.4th at p. 536.)

*Dennis* relied on *People v. Kurtzman* (1988) 46 Cal.3d 322, which concluded that it is proper to instruct a jury that it "may not *return a verdict* on the lesser offense unless it has agreed beyond a reasonable doubt that defendant is not guilty of the greater crime charged, but it should not be interpreted to prohibit a jury from *considering* or *discussing* the lesser offenses before returning a verdict on the greater offense." (*Id.* at p. 329.)

Following and applying *Dennis* and *Kurtzman,* we agree with appellant that the challenged remark was incorrect because it told the jurors that if they could not agree on attempted murder *then* they could consider attempted voluntary manslaughter.

Yet, the error was harmless under any possible standard of review.[3] The evidence would not have justified an attempted manslaughter verdict and such a verdict would have been inconsistent with the defense theory asserted at trial. No credible evidence supported either species of voluntary manslaughter. The People presented evidence proving that appellant pointed a gun at Cogdell and threatened to kill him. When Cogdell attempted to defend himself, appellant fired the gun twice at close range, shooting Cogdell in the leg. The defense maintained that appellant was not armed and did not shoot Cogdell. Under neither version of events was Cogdell the initial attacker nor was appellant provoked. Moreover, appellant's defense was not consistent with attempted voluntary manslaughter. Defense counsel argued during closing that Cogdell and Hubbell were not credible witnesses; appellant did not have a gun, did not threaten to kill Cogdell and did not shoot him. Defense counsel did not argue in favor of an attempted voluntary manslaughter verdict. Finally, the jury was given CALJIC No. 8.50, which informed the jurors that when distinguishing between attempted murder and attempted manslaughter, the prosecution bears the burden of proving the existence of malice and the absence of heat of passion or provocation. Thus, when the jury found appellant guilty of attempted murder it necessarily concluded that the prosecutor had proved he acted with malice and did not act in the heat of passion or in response to legally adequate provocation. For all of these reasons, we conclude that it is not even remotely possible that the erroneous comment could

---

[3] Appellant contends that the error must be assessed under the stringent *Chapman v. California* (1967) 386 U.S. 18 standard, while the Attorney General cites the lenient *People v. Watson* (1956) 46 Cal.2d 818 standard.

7

have affected the verdict.

(Lodged Doc. No. 5, Opinion, at 10-12.)

  2. *Applicable Law*

  A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72. Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982) (*citing* Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, a petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710 (1993) (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996). The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Id.

  3. *Analysis*

  Prior to deliberations, the trial court properly instructed the jury with CALJIC No. 17.10, stating:

> If you are not satisfied beyond a reasonable doubt that the Defendants are guilty of the crimes charged, you may nevertheless convict them of any lesser crime, if you are convinced beyond a reasonable doubt that the Defendants are guilty of a lesser crime. The crime of attempted voluntary manslaughter is lesser to that of attempted murder as charge in Count One. Thus, you are to determine whether the Defendants are guilty or not guilty of the crimes charged or any lesser crimes. In doing so you have discretion to choose the order in which you evaluate each crime and consider the evidence pertaining to it. You may find it productive to consider and reach a tentative conclusion on all charges and lesser crimes

before reaching any final verdict.  However, the Court did not accept a guilty verdict on a lesser crime unless you have unanimously found the Defendant not guilty on the charge crime or the greater crime.

(CT 270-271; RT 2051-2052.)

Notwithstanding the trial court's proper recitation of CALJIC No. 17.10, the Court violated the acquittal-first rule of Kurtzman by later instructing the jury that it must first unanimously acquit on the offense of murder before even considering the lesser offense of manslaughter. (Lodged Doc. No. 5, Opinion, at 11, citing People v. Dennis, 17 Cal.4th 468 (1998); People v. Kurtzman, 46 Cal.3d 322 (1988).  In any event, it is clear the error is subject to harmless error analysis under Brecht v. Abrahamson, 507 U.S. 619, and was harmless in this instance.

The apparent basis of Petitioner's claim is that he was guilty of voluntary manslaughter and not murder.  However, as fully explained by the Court of Appeal, the evidence of Petitioner's guilt of the greater offense of murder was overwhelming, and there was not sufficient evidence to support an attempted manslaughter offense.  The prosecution's theory of the case was that Petitioner pointed the gun at Cogdell and threatened to kill him.  It was undisputed that the Cogdell was indeed shot in the leg by a rifle.  Petitioner's cousin and co-defendant admitted that Petitioner had been drinking heavily that morning and directed him to drive to the victim's residence.  (RT 1782, 1793-1794, 1786.)  Both Cogdell and his girlfriend (Hubbell) testified that Petitioner approached the small travel trailer yelling that Cogdell owed him and he was going to kill him. (RT 417-419, 455, 778.)  Petitioner's cousin and co-defendant, Marquez, retried a gun from the trunk of the vehicle and gave it to Petitioner.  (RT 465, 778, 781.)  Petitioner then entered the trailer and told Cogdell he was going to take whatever he desired.  (RT 422.) Petitioner then pointed the gun at Cogdell stating "I'm going to kill you."  (RT 484, 763, 766, 909.)  A struggle ensued as Cogdell attempted to take the gun from Petitioner causing the gun to discharge twice-the first bullet hitting the cabinet and the second hitting Cogdell's lower left leg.[4]

---

[4] The prosecution presented evidence that Petitioner had previously been convicted of first degree burglary, to support an inference of motive and intent on this occasion.  (RT 1099-1101.)

9

Petitioner's sole defense at trial was that he had no involvement in the shooting of Cogdell. Thus, a conviction for voluntary manslaughter would have been inconsistent with Petitioner's defense. Most importantly, there was *no* evidence before the jury to support a conviction for voluntary manslaughter, and the erroneous instruction could not have had a substantial and injurious influence on the jury's verdict. This is so because the prosecutor was required to prove every element of the charged offense, as well as the absence of provocation and heat of passion, beyond a reasonable doubt, and because heat of passion was inconsistent with Petitioner's theory of the case and unsupported by the evidence, any error by the trial could not have had a substantial and injurious effect on the verdict.

As the Court of Appeal pointed out that the jury received numerous instructions that, when viewed as a whole, properly conveyed to the jury that the prosecution was required to prove every element of the offense beyond a reasonable doubt. The jury was instructed pursuant to CALJIC 8.50 that the prosecution had the burden of proving, beyond a reasonable doubt, the existence of malice and absence of heat of passion and all instructions were to be viewed as a whole. (CT 275; Lodged Doc. No. 5, Opinion, at 12.) Thus, the jury's finding that Petitioner was guilty of attempted murder, in lieu of attempted manslaughter, necessarily implies it found that Petitioner acted with the requisite malice and not in the heat of passion or as a response to a legally adequate provocation.

Based on the foregoing, the error in this instance did not have a substantial and injurious influence on the jury's verdict and habeas corpus relief is foreclosed. The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 31, 2009**              **/s/ Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE